(September 7, 1912.)

# F. B. RUSSELL, Respondent, v. T. K. LITTLE, Appellant.

[126 Pac. 529.]

LANDLORD AND TENANT—IMPLIED COVENANT TO REPAIR—NEGLIGENCE OF LANDLORD—MEASURE OF DAMAGES—PROOF OF VALUE OF MERCHANDISE.

(Syllabus by the court.)

1. There are no implied covenants on the part of a landlord to repair the premises let or to keep them in repair, and the landlord is not bound to repair the premises let unless he has expressly covenanted so to do in his lease.

2. Where a tenant loses a stock of merchandise stored in the leased premises, and there was no covenant in the lease whereby the landlord was obligated to repair the premises or keep them in repair, and the tenant seeks to recover from the landlord the value of the goods destroyed by fire occurring in the building, on the ground that the fire was caused by defects in the heating plant or flue or the negligent operation and management of the furnace and heating plant; *held,* that the recovery, if any shall be had, must be founded upon the law of negligence, and cannot rest upon the theory of an implied contract.

3. Where a tenant sues a landlord for the loss of merchandise caused by a fire, which the tenant alleges resulted from the carelessness and negligence of the landlord, but it is not alleged or shown that the negligence was criminal or that the loss was caused through any fraud on the part of the landlord, and it was not shown or contended that the tenant had an old and well-established business and business reputation at the particular place: *held,* that the measure of damages is the value of the goods at the time of the loss, and that injury to the business or loss of profits cannot be taken into consideration in assessing damages.

4. In an action for destruction of a stock of goods, where the plaintiff testifies that the invoice was destroyed and that she cannot particularize or enumerate the goods, but that they were of the aggregate value of $1,250; *held,* that such evidence, though indefinite, is sufficient upon which to rest a verdict in favor of the plaintiff.

APPEAL from the District Court of the Seventh Judicial District for Canyon County. Hon. Ed. L. Bryan, Judge.

Action for damage. Judgment for plaintiff. Defendant appeals. *Reversed.*

Cavanah, Blake & MacLane and Smith & Scatterday, for Appellant.

Where there are no covenants to repair in a lease, the landlord is not liable upon contract or *quasi* contract for damages to the tenant's goods or person resulting from a defective condition of the demised premises; but such liability, where it exists, arises solely from negligence, and such negligence must be affirmative and positive—not merely the negative negligence or failure to repair, but positive misfeasance. (*Jones v. Millsaps,* 71 Miss. 10, 14 So. 440, 23 L. R. A. 155; *Franklin v. Tracey,* 117 Ky. 267, 77 S. W. 1113, 78 S. W. 1112, 63 L. R. A. 649; *Gately v. Campbell,* 124 Cal. 520, 57 Pac. 567; *Angevine v. Knox-Goodrich* (Cal.), 31 Pac. 529; *Ward v. Fagin,* 101 Mo. 669, 20 Am. St. 650, 14 S. W. 738, 10 L. R. A. 147; *Brewster v. DeFremery,* 33 Cal. 341; *Krueger v. Ferrent,* 29 Minn. 385, 43 Am. Rep. 223, 13 N. W. 158; *Kuhn v. Heavenrich Co.,* 115 Wis. 447, 91 N. W. 994, 60 L. R. A. 585; *Railton v. Tailor,* 20 R. I. 279, 38 Atl. 980, 39 L. R. A. 246; *Doyle v. U. P. Ry. Co.,* 147 U. S. 413, 13 Sup. Ct. 333, 37 L. ed. 223; *Bowe v. Hunking,* 135 Mass. 380, 46 Am. Rep. 471; *Keates v. Cadogan,* 10 Com. B. 591.)

The measure of damages in such a case as this is simply the value of the goods destroyed, and plaintiff having testified as to the value of the stock of goods, any evidence as to her profits or as to the value of her business was not relevant in any way to show what the goods were worth, and was not appropriate to any issue in the case, but the admission of such testimony permitted the jury to add damages for purely speculative matters not recoverable under the law. (*Weick v. Dougherty* (Ky.), 90 S. W. 966; *Casper v. Klippen,* 61 Minn. 353, 52 Am. St. 604, 63 N. W. 737; *City of Cincinnati v. Evans,* 5 Ohio St. 594.)

It would only be simple justice to the defendant to require more definite testimony as a basis for a claim for damages from simple negligence, without any affirmative wrongdoing upon

the defendant's part.    (*Schwartz v. Schembel,* 53 N. Y. Supp. 829, 24 Misc. Rep. 733; *Brooke v. Cunard S. S. Co.,* 93 N. Y. Supp. 369; *Central Coal Co. v. Hartman,* 111 Fed. 96, 49 C. C. A. 244.)

Griffiths & Griffiths, for Respondent.

Defendant not only erected and maintained a defective flue and furnace, but maintained and operated a heating plant and fire therein in a grossly careless manner, and it was through his carelessness and negligence in maintaining and operating this heating plant and fire that plaintiff's loss occurred.    (*Butler v. Cushing,* 46 Hun (N. Y.), 521; *Roussinet v. Rebout,* 76 Cal. 454, 18 Pac. 423; *Pike v. Brittan,* 71 Cal. 159, 60 Am. Rep. 527, 11 Pac. 890; *Hysore v. Quigley,* 9 Houst. (Del.) 348, 32 Atl. 960.)

The evidence showed that respondent had an established business, which was destroyed by this fire; that this business was a well-established business, with well-known and uniform profits, and that it had a value of a specific sum.    There is nothing submitted to contradict this evidence in any particular.    It is not shown that there was any other place for this business to have been continued, and thereby kept together and saved to respondent.   (*Levison v. Myers,* 24 Pa. Sup. Ct. (Pa.) 481; *Talcott v. Crippen,* 52 Mich. 633, 18 N. W. 392; *Pereira v. Smith,* 79 Cal. 232, 21 Pac. 739; *Parke County Commrs. v. Sappenfield,* 10 Ind. App. 609, 38 N. E. 358.)

The evidence as to the damage sustained by respondent is not speculation, guesses or estimates.    The witness showed herself competent to testify as to these values.    The evidence on this point was not objected to by defendant or disputed in any particular.    The jury concluded that the plaintiff was entitled to recover the sum of $800—a sum much too small to compensate plaintiff for her loss, but fairly determined by the jury from the evidence submitted and of which determination neither plaintiff nor defendant now have the right to complain.    (*Shafer v. Wilson,* 44 Md. 268; *Allison v. Chandler,* 11 Mich. 542; *Oliver v. Perkins,* 92 Mich. 304, 52 N. W. 609; *Goebel v. Hough,* 26 Minn. 252, 2 N. W. 847; *Water v.*

*Post,* 13 N. Y. Sup. Ct. 363; *Menard v. Stevens,* 44 N. Y. Sup. Ct. (12 Jone. & S.) 515; *Hine v. Cushing,* 53 Hun, 519, 6 N. Y. Supp. 850; *City of San Antonio v. Royal* (Tex.), 16 S. W. 1101.)

AILSHIE, J.—The respondent, who was plaintiff in the lower court, commenced her action for the recovery of damages for loss of a stock of merchandise caused by fire, and procured a judgment for the sum of $800. The defendant appealed.

The plaintiff had been the defendant's tenant for some months, occupying a room on the first floor or street grade, in which she had a stock of millinery goods and was conducting her business. The building in which plaintiff was engaged in business was rented to various tenants, and the landlord, the defendant herein, had control of certain rooms in the basement, in which he kept a heating plant for heating the various rooms of the building, and he had under his control and management the operation of the heating plant. About the 4th of January, 1910, a fire started, either in the furnace-room or the room occupied by the plaintiff. The room she occupied was immediately above the furnace-room, and the flue to which the furnace was connected passed through this room, or rather was in one of the walls to the room. The fire which occurred destroyed her entire stock of millinery, of the value of about $1,250. She sued her landlord for the value of the stock of goods destroyed and the additional sum of $500 for loss of profits and damage to her business. The evidence was not positive, but rather circumstantial, as to the cause of the fire. The plaintiff contended that the fire had started from the furnace, that the landlord had left an eight or ten inch hole open in the flue between the floor and the place where the pipe from the furnace entered the flue. The pipe had previously entered the flue through this opening, and when the pipe was removed the opening was simply covered with a piece of tin or galvanized iron nailed on to the side of the flue. It was also contended by the plaintiff, and evidence was introduced to that effect, that the walls of the flue were too thin

for the size of the furnace.   The defendant, on the other hand, introduced evidence tending to indicate that the fire might have started from an electric iron left with the current on in the millinery store.   The evidence produced tended most strongly, however, to indicate that the fire had started from the furnace-room.

The only instruction given in the case with reference to this particular cause of action and the plaintiff's right of recovery and the defendant's liability was incorporated in the following instruction, to which the defendant took exception: "You are further instructed that, regardless of the condition of the flue, the defendant is not liable for damages, unless you also find that the fire was, in fact, caused by the flue on account of its defective condition."   The defendant asked the court to give the following two instructions, which were refused: (1) "You are instructed that, in the absence of an express agreement by the landlord to make repairs, the landlord is not liable to the tenant for damages caused by defects in the building existing at the time the lease was entered into."   (2) "You are instructed that, under the facts in this case, the defendant is not liable to the plaintiff for damages caused by defects in the building, unless the defendant had knowledge thereof, or unless the defect was so apparent that he was presumed to have notice thereof."   It is contended by the defendant, who is appellant in this court, that the court erred in giving the instruction which was given and in refusing to give the instructions requested.   This, in a measure, involves the question as to the liability of a landlord to his tenant for repairs to the premises, and that question has been briefed quite exhaustively by the appellant.

It is unnecessary to attempt to analyze or quote from the authorities at any length on this subject, as they are well-nigh uniform to the effect that there are no implied covenants on the part of a landlord to repair the premises or to keep them in repair, and that the landlord is not bound to repair unless he has expressly covenanted so to do by his lease, and is not liable for an injury arising from a failure on his part to repair.

In *Railton v. Taylor*, 20 R. I. 279, 38 Atl. 980, 39 L. R. A. 246, the action was brought by a tenant to recover for damages sustained on account of the negligent and careless management and operation of a heating plant in the defendant's building, of which the plaintiff was a tenant. The Rhode Island supreme court, in passing upon the liability of the defendant in that case, called attention to the fact that the liability of the landlord must be predicated upon his negligence rather than upon any implied covenant to change or repair the premises. "The mere fact," said the court, "that the building, together with said apparatus, was not properly constructed, gives the plaintiff no cause of action, as the defendant had the right to construct his building as he saw fit, so long as he violated no one's rights; and she does not allege that the condition of the premises has been changed since the commencement of the tenancy. (See *Henson v. Beckwith*, 20 R. I., pt. 1, p. 169, 78 Am. St. 847, 37 Atl. 702, 38 L. R. A. 716.) If, however, he used a defective appliance in said building, to the plaintiff's damage as tenant, that might constitute actionable negligence on his part."

The same question is dealt with at considerable length in the note to *Hines v. Willcox*, 96 Tenn. 148, 54 Am. St. 823, 33 S. W. 914, 34 L. R. A. 824. It will be observed that the Hines-Wilcox case is one of the very few cases that go to the extent of holding the landlord to any implied obligation to repair or improve the premises. Other cases indicating a similar view are *Bissell v. Lloyd*, 100 Ill. 214, and *Looney v. McLean*, 129 Mass. 33, 37 Am. Rep. 295. Among the cases cited supporting the general rule, the following are perhaps the leading and most interesting ones: *Jones v. Millsaps*, 71 Miss. 10, 14 So. 440, 23 L. R. A. 155; *Franklin v. Tracey*, 117 Ky. 267, 77 S. W. 1113, 78 S. W. 1112, 63 L. R. A. 649; *Gately v. Campbell*, 124 Cal. 520, 57 Pac. 567; *Ward v. Fagin*, 101 Mo. 669, 20 Am. St. 650, 14 S. W. 738, 10 L. R. A. 147; *Krueger v. Ferrant*, 29 Minn. 385, 43 Am. Rep. 223, 13 N. W. 158; *Kuhn v. Heavenrich*, 115 Wis. 447, 91 N. W. 994, 60 L. R. A. 585; *Rosenfield v. Newman*, 59 Minn. 156, 60 N. W. 1085.

*Kuhn v. Heavenrich, supra,* is a very clear and illuminating case on this question. In the course of the opinion, Justice Marshall, speaking for the court, said:

"That there is a duty resting on the landlord in such a situation, not to cause injury to his tenant, and to prevent such injury, has been held in many jurisdictions in actions grounded on negligence. But there is no authority, worthy of our consideration, to support the idea that the duty is one resting in contract. The distinction between the obligations of a contract and the obligation which one owes to another respecting that other's personal safety and the safety of his property has been many times lost sight of in considering this question, as what follows will demonstrate."

After reviewing and analyzing the authorities, he added:

"Enough has been said, even if the question were entirely new in this state, to demonstrate that the common-law rule, that there is no implied covenant on the part of a landlord of fitness, present or future, of leased premises, forming a part of the contract between him and his tenant, is universal; that it applies as well to a lease of part of a structure, other parts being let to others in severalty, and to parts thereof common to all, as to leased premises constituting an entire building."

· It is clear, therefore, upon both reason and authority, that whatever liability may be chargeable to the appellant in this case, it must rest upon the law of negligence. The jury should have been instructed on this subject. The mere fact that the flue may have been defective was not sufficient. The appellant must have been guilty of actionable negligence. He must have known of the defect, or it must have been such a defect or of such a nature as to impute knowledge and charge him with notice of the condition. In other words, the general law of negligence in such cases is the rule of law to be applied to this case. The court should have instructed the jury on the law of negligence in such cases. The mere instruction that the fire must have been caused from the flue and on account of its defective condition was not enough. This was too vague and uncertain. It did not carry with it

any suggestion of negligence. It is true that upon the evidence introduced in this case, the jury might have found with the plaintiff had they been correctly instructed; but with the evidence conflicting as it is, we cannot say, and would not be justified in conjecturing, what conclusion the jury would have reached had they been correctly instructed in the law of this case. For these reasons the judgment must be reversed.

Since this case must again be tried, we find it necessary to consider one or two other questions that have been presented. Upon the trial, counsel for plaintiff asked the plaintiff the following question: "About what was the average of the daily sales you were making in this business?" To this the defendant interposed an objection, which was overruled and the witness was allowed to answer, "About $30." Counsel also asked the plaintiff the following question: "What was its value—the value of the business, I mean," to which an objection was interposed and overruled, and the witness answered, "$500." In other words, the plaintiff was allowed to introduce evidence as to the value of her stock of goods and also as to the value of the business and the daily receipts from the business. She testified that her net profit was about $15 per day.

It will be seen from the foregoing questions and answers that the plaintiff was allowed to introduce evidence, both as to the value of her stock of goods which was destroyed and also as to the value of the business as a distinct and separate item from the value of the goods. No evidence was introduced in this case tending to prove that this particular location was any better than any other location in the town of Caldwell for such a business, nor was there any evidence to show that this was an old established business with an established reputation throughout the community. On the contrary, the plaintiff had only been in business some four or five months in this place. No contention was made that she could not have procured another place equally desirable. Neither was there any proof whatever tending to show any *fraud or criminal negligence* on the part of the appellant in the destruction of this stock of goods and place of business. Under such circum-

stances, the only recovery that could be had would be for the value of the goods and property at the time destroyed. (See *Sears v. Lydon,* 5 Ida. 358, 49 Pac. 122; *Casper v. Klippen,* 61 Minn. 353, 52 Am. St. 604, 63 N. W. 737; *City of Cincinnati v. Evans,* 5 Ohio St. 594.)

The objection urged by appellant that there was no competent proof as to the value of the stock of goods destroyed is not well taken. The respondent testified that she had lost her invoice and could not enumerate or give a detailed description of the property destroyed, but that it aggregated about $1,250. While this was not a very satisfactory kind of proof, still it was sufficient upon which to rest a verdict.

The judgment is reversed and a new trial ordered. Costs awarded in favor of appellant.

Sullivan, J., concurs.

Stewart, C. J., concurs in a reversal.