**Myrna RAMSAY, Appellant,**

v.

**Arthur E. MORRISSETTE, t/a Morrissette Realty Company, Appellee.**

No. 4336.

District of Columbia Court of Appeals.

Argued Oct. 22, 1968.

Decided April 25, 1969.

Rolland G. Lamensdorf, Washington, D. C., for appellant.

Austin F. Canfield, Jr., Washington, D. C., with whom Richard W. Galiher, Washington, D. C., was on the brief, for appellee.

Before KELLY, FICKLING and KERN, Associate Judges.

KELLY, Associate Judge.

Appellant, a tenant, sought to recover damages from her landlord for injuries resulting from an assault. She alleged in her complaint that due to the negligent and careless manner in which the landlord maintained the apartment building, contrary to representations made to her at the signing of the lease, an intruder was permitted to enter the building and her apartment where he assaulted her. This appeal questions the correctness of the trial court's ruling granting the landlord's motion for summary judgment.

Appellant testified by way of deposition that she leased an apartment from appellee after a reassuring conversation with the resident manager that he was there in the building to take care of any problems. When the resident manager died, the landlord found it difficult to find a replacement. Two tenants in the building were

finally designated as part time resident managers. On one occasion when she encountered the two resident managers cleaning the hallways they informed her that "people come in off the street in the evenings and use the halls as urinals and sleep on the carpeted hallway." They also disclosed that they had been instructed by the landlord not to discuss these incidents with the tenants. While appellant did not witness any of the described occurrences herself, she did testify that about a month or six weeks prior to the assault upon her someone tried to force his way into another tenant's apartment. She was informed of this incident by two policemen who came to her door, asked if she lived alone, and warned her to be careful.

On the morning of the attack which formed the basis for her complaint, appellant was preparing to go to work when she heard a knock on the door. Leaving the latch on the door, she opened it enough to see a young man standing there holding some newspapers. When he asked her if she wanted to buy a Washington Post, she replied that she was a subscriber. She described the young man as very polite, clean and well-dressed. A few minutes later she heard another knock on the door. On opening the door, still on the latch, the same young man stated that he was thirsty from having been out on his route and asked for a glass of water. Appellant admits pausing to consider the request, but she resolved her indecision by giving the young man the glass of water, taking the latch off the door and opening the door a crack to do so. As the young man handed the glass back to her, he pushed the door open and entered the apartment. When appellant screamed, he explained that he only wanted to pay her for her kindness, and threw a dime at her. In response to her entreaties to leave, the intruder turned to go. But just as she was about to close the door behind him, he forced it open again with

his shoulder, came in and assaulted her. According to the complaint, appellant suffered numerous lacerations of the face and head, and permanent damage to her teeth and jaw as a result of the assault.

We comment first on a procedural problem. At the deposition, after a lengthy direct examination on the issue of liability, appellant refused, on advice of counsel, to answer certain questions dealing with the acts of negligence with which the landlord was charged. Counsel for appellee then terminated the deposition before it was completed in order to file a motion to compel appellant to answer the questions.[1] With the motion to compel answers counsel also filed an alternative motion for summary judgment, which was granted, making the motion to compel answers moot. Despite appellee's assertion that all that remained to be covered by deposition was the nature and extent of appellant's injuries, matters not in issue on this appeal, we think it was error to entertain the motion for summary judgment based as it was on an incomplete deposition. Not only did the abrupt termination of the deposition come at a time when counsel for appellee was seeking answers to questions which he considered "vital" to the case, but it effectively precluded any examination by counsel for appellant, if he were so disposed, either as to the issue of primary negligence or as to contributory negligence. In this posture of the case the court should have ruled on the motion to compel appellant to answer the questions propounded at the deposition, leaving to appellee the opportunity to file a motion for summary judgment at a later time.

On the merits, it is settled that a landlord's duty to those persons legally on the premises is to use reasonable care with respect to those portions of a building over which he retains control[2]. Also, as a gen-

1. GS Civil Rule 30(d).

2. Kay v. Cain, 81 U.S.App.D.C. 24, 154 F.2d 305 (1946); *cf.* Levine v. Katz,

132 U.S.App.D.C. ——, 407 F.2d 303, (decided May 14, 1968).

eral rule, a landlord has no duty to protect a tenant, or a tenant's property, from criminal acts of third persons.[3] Such a duty was found in Kendall v. Gore Properties, 98 U.S.App.D.C. 378, 236 F.2d 673 (1956),[4] where the landlord's employee, alleged to be of unsound mind, strangled to death a tenant whose apartment he was painting. The negligence in *Kendall,* however, was the failure to make any investigation whatever of the employee before hiring him to work, without supervision, in the apartment of a young woman, living alone. The court did say that the tenant, under her lease, paid both for shelter and protection. It said further:[5]

> We have heretofore made clear as to apartment houses, the reasons which underlie the landlord's duty under modern conditions and which, as to various hazards, call for at least "reasonable or ordinary care, which means reasonably safe conduct, but there is no sufficient reason for requiring less." True, the landlord does not become a guarantor of the safety of his tenant. But, if he knows, or in the exercise of ordinary care ought to know, of a possibly dangerous situation and fails to take such steps as an ordinarily prudent person, in view of existing circumstances, would have exercised to avoid injury to his tenant, he may be liable. * * * (citations omitted)

The court also stressed that *"particular* conduct, *depending upon circumstances,* can raise an issue for the jury to decide in terms of negligence and proximate cause". *Id.* at 384, 236 F.2d at 679.

 We do not here attempt to define the limits of a landlord's liability to pre-

vent, deter, or control criminal conduct around or within the leased premises.[6] The traditional duty of reasonable care under all the circumstances would, of course, apply to those parts of the building used in common by all tenants where it can be shown that the landlord was aware of a dangerous situation and took no action either to remedy the situation or to warn the tenants of the danger. It is appellant's contention that in the circumstances of this case a jury could reasonably find that her injuries were the proximate result of the landlord's negligence in (1) not replacing the full time resident manager who died, (2) failing to alert the tenants of the conditions, (3) keeping the facts from the tenants, (4) failing to apprise the police of the situation, (5) failing to install a lock on the front door, and (6) failing to prevent intruders and strangers from using the halls as urinals and sleeping on the carpeted hallway. Failure to alert the tenants to the existing conditions in the building, or to conceal those conditions from the tenants, become immaterial in light of appellant's testimony that she had been told of the very conditions of which she complains and had been warned to be careful. However, we are of the opinion that appellant should be allowed to present evidence to support her remaining claims of negligence at trial. If she can establish facts from which a jury may reasonably infer negligence and causation she is entitled to have the jury consider them. If not, the court may then rule as a matter of law. We are unable to do so on the record before us.

We by no means suggest that there is a general legal duty on the landlord to provide full time resident managers or to in-

---

3. Applebaum v. Kidwell, 56 App.D.C. 311, 12 F.2d 846 (1926); Goldberg v. Housing Authority of City of Newark, 38 N.J. 578, 186 A.2d 291, 10 A.L.R.3d 595 (1962); De Foe v. W. & J. Sloane, D.C.Mun.App., 99 A.2d 639 (1953).

4. *See, also* Argonne Apartment House Co. v. Garrison, 59 App.D.C. 370, 42 F.2d 605 (1930).

5. 98 U.S.App.D.C. at 385, 236 F.2d at 680.

6. It has been held that there is no duty to provide police protection within a public housing project. Goldberg v. Housing Authority of Newark, *supra,* note 3.

stall locks on the front door of an apartment house. The test is what is reasonable in all the circumstances. And we point out that if in these changing times of modern urban living circumstances exist which may require that the landlord's duty of reasonable care encompass steps to deter or prevent criminal acts against his tenant, these same circumstances affect the tenant's concomitant duty to use reasonable care for his own safety. In this case appellee strongly urges that on her own deposition testimony appellant is clearly contributorily negligent as a matter of law. But here again, because of the posture of this record we think it appropriate to leave this question to the court for disposition upon presentation of appellant's case at trial.

Reversed.